# United States District Court
# District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>V. )<br>)<br>JONATHAN MATOS AND, )<br>RAMON DIAZ, )<br>DEFENDANTS )<br>) | Criminal Action<br>No. 04-10237<br>***Supplemental***<br>***Memorandum***<br>***in Support of Motion***<br>***to Suppress*** |

## PROCEDURAL BACKGROUND

During a hearing on the defendants' motion to suppress in September of 2005, the lead investigative officer in this matter, Detective Shane Ramos of the New Bedford Police, indicated that he had maintained handwritten notes of his observations of events that led to the arrest of the defendants before this Court. Detective Ramos testified that he had produced a type written version that had been provided to counsel. Defense counsel had not been provided with copies of Detective Ramos' handwritten notes.

The Court ordered, and the government agreed to provide counsel with the detective's handwritten notes and other material. The matter was suspended to permit the government to respond in writing to defendants' motion to suppress and to provide defense counsel with discovery.

In the interim, the government also responded to a defense request for information regarding the protocol of the New Bedford Police Department regarding the safeguarding of narcotics seized in criminal matters investigated by the New Bedford Police. The

government verbally responded that there was no such protocol. The government provided defense counsel a drug certificate for the small quantity of narcotics allegedly purchased via a controlled buy on January 4, 2004. (See attached Exhibit "A")

The government also provided defense counsel with telephone logs of calls purportedly made from a telephone controlled by a Gordon Gomes, an alleged street-level dealer of narcotics, to Jonathan Matos.( See Attached Exhibit "B")

**FACTS:** *FROM THE DEFENDANT'S PERSPECTIVE*

The defendants have challenged the probable cause to arrest them in this case. The following facts are submitted from the defendant's perspective, in addition to those already received in evidence by the Court..

The defendant owns and operates an auto detailing business out of a garage on County Street in New Bedford.. He and his father earn extra money buying, renovating and reselling used automobiles. The vehicles observed by the police in this case relate to that business. The following information is relevant to each vehicle:

1. Green Acura – Mr. Matos purchased this vehicle for resale from Angel Quiñones. To save on insurance and registration costs, Quiñones left the plate on the vehicle for a brief period of time until the car was cleaned and resold. In the interim Matos drove the vehicle. The vehicle was in an accident. The parties recovered $8,500.00 for the vehicle. Matos received $2,000.00; Quiñones received $6,500.00.

2. P.T. Cruiser - The vehicle was a rental for the Acura while it was being repaired after an accident. The rental was covered by insurance.

3 & 4 Plymouth Voyager was originally owned by Elliot Cordero. He sold the Voyager to Matos who gave it to his father Jesús Mendoza. Mendoza transferred the plates from his Pontiac Sunbird to the Voyager. Cordero took the plates from the Voyager and put them on the Mazda Millennia.

5. Mazda Millennia. Matos bought the Mazda and asked Cordero to use his

plates and to insure the vehicle in Cordero's name to save money until he refurbished and sold the car.

6. Gold Dodge Intrepid - owned by Jesus Mendoza, father of Matos.

7. Mitsubishi GT - owned by co-defendant Diaz.

The various "stash houses" claimed by the police all have reasonable connections to the defendants. The following information is relevant:

1. 342 Hathaway Boulevard - Matos, his girlfriend and their child lived at this location.

2. 28 Ashley Street - Díaz lives at this location.

3. 11 Spruce Street - Friend of Díaz and Matos.

4. County Street garage - home of Blimm Auto Detailing, a business owned and operated by Matos, for the repair and resale of autos he purchases and for detailing of vehicles.

The police argue that the informant is reliable because of information provided in 1998, which lead to the arrest and conviction of Daniel Morales. If this true, the informant was reliable six (6) years ago.

The police claim that the informant needs to remain anonymous because the informant fears retaliation. However, the police also claim that on February 26, 2004 at 5:00 p.m. the informant called them stating that it just purchased cocaine from Matos. A few hours later Matos was arrested.

No informant could remain unidentified if this information were true. The defendant would easily be able to identify the person he sold drugs to on a specific time and date, particularly if it happened hours before his arrest. (It should be noted that this alleged sale was not a controlled buy and the police recovered no cocaine. It would also indicate that the informant was still using and/or abusing drugs. Lastly, it would indicate that the informant was committing criminal offenses while under the color of police authority.)

The defendants suggest that the transaction did not occur; that the police would not

readily compromise the identity of their informant. Furthermore, the police did not confiscate any narcotics from their informant on February 26, 2004 or field test any contraband allegedly purchased by their informant to corroborate even minimally the allegation.

The police needed additional cause to stop the Mazda Millennia on February 26, 2004. The vehicle traveled lawfully from New Bedford into Rhode Island and back. The police saw no activity from within the vehicle indicating that either occupant of the car was involved in criminal activity. Moreover, they did not see any indication that either defendant was engaged in any activity associated with street level sales of narcotics that day. The only information they had indicating that drugs had been present in that car that day came from the alleged informant.

All of the surveillance observations leading up to February 26, 2004 can be explained as innocent events and can be eliminated as drug transactions. No direct exchange was seen regarding any drug sale, save for the alleged controlled buy in early January. Although the officer testified that he did witness three (3) hand-to-hand exchanges between Mr. Matos and street purchasers during the course of his investigation, his handwritten notes, say otherwise. (See Attached Exhibit "C")

The defendant suggests that such a fabrication impeaches the believability of the officer not only about the details of his surveillance but also about the uncontrolled buy on February 26, 2004 and the controlled buy in January 2004.

The subjects of the alleged "street deals" allegedly witnessed by Detective Ramos were neither known drug addicts nor dealers. None of the locations where either the defendant was seen entering and leaving were known drug houses or residences of people identified by the police as being associated with narcotics.

Officer Ramos' report and testimony indicate that 640 calls were made from Gordon Gomes to Matos. According to the reports filed in this case, the informant told the police that he/she contacted Gordon Gomes through Gomes' telephone number: 508 992-4253. The informant identified Mr. Matos' telephone number as 508 501-5955. Mr. Matos' telephone number does not appear once in the telephone logs provided by the government, an apparent complete contradiction of what the police have stated. The government also appears to be unable to provide the telephone logs for Gomes' telephone number as provided

by the informant (508 992-4253). The telephone logs that were subject to the police subpoena reflect a number listed to Gordon Gomes as 508 287-3621, not 508 992-4253.

**ISSUES:**

**Did the police have probable cause to arrest the defendant for the previous sale made to the Confidential Informant (CI) during the week of January 4, 2004?**

The defendants contend that no controlled buy occurred on January 4, 2004. Like every other aspect of this investigation i.e. cars, phone log, houses and surveillance nothing was corroborated or confirmed as related to drug activity. The January 4, 2004 buy was conducted by a sole police officer operating without any backup., a highly unusual way to conduct a control buy. (Usually multiple officers are involved). Only one officer searched the CI and monitored his/her movement, and that search was allegedly conducted on the street. He checked the pockets of the CI. No one confirms this search. The drugs were allegedly field-tested but no proof or corroboration exists of such a test.

The certificate of analysis for the small amount of cocaine that was the product of the alleged controlled buy from January 4, 2004 indicates that all the narcotics allegedly seized during this case were submitted simultaneously to the laboratory in March of 2004. The drugs from the controlled buy were submitted simultaneously with the drugs seized from the Mazda on February 26, 2004. There exists no chain of custody evidence that drugs were provided to the evidence officer after the alleged control buy on January 4, 2004. The defendant suggests there was no controlled buy on January 4, 2004, that the drugs were all seized on February 26, 2004 and all submitted for analysis on March 4, 2004.

Federal law allows the police to make an arrest upon probable cause. They do not have to make the arrest immediately. The Courts have permitted the police to delay in making an arrest, particularly in drug cases, where the delay in arrest may lead them to other distributors.

The government argues that because the police had probable cause to arrest for the controlled buy in January, it does not matter that no probable cause existed for a new incident on February 26th. Once the police have probable cause; they have probable cause in

perpetuity.

Even if the Court accepts the Government's position, namely, that the police had cause to arrest, the police were not authorized to conduct a search with an unlimited scope. The Government must justify the scope of the search conducted by the police in the case at bar. The rational for a search incident to an arrest under the 4th Amendment was enunciated in *New York v. Belton*, 453 US 454, 457 (1981), quoting from *Chimel v. California*, 395 US 752, 763 (1969). A warrantless search incident to a lawful arrest is permitted to enable the arresting officer to disarm the arrestee and prevent him from: (1) harming the police or the public, (2) escaping, (3) destroying or concealing evidence.

In applying the rational in *Chimel*, Id. to the case at bar, any search incident to this arrest should have been limited to the person of the defendant Matos. The police arguably only had cause to arrest him, not Mr. Díaz, the operator of the car. Multiple police units surrounded the defendants, removed them from the car, separated them, patted and frisked them, handcuffed them and questioned them separately. There was no cause to remove Mr. Díaz from the car. Once the police had Mr. Matos in custody, which was immediate, the police and/or public were not in danger. The defendant could not escape because the police were in complete physical control of him and no evidence of a crime could be concealed or destroyed. There was no basis to search the vehicle for fruits of the January 4th incident - because there was no basis to believe that there would be evidence of a crime committed six weeks prior. There was also no cause of basis to believe that drugs were currently in the car.

Had the police stopped the defendant Matos after he made the alleged sale to an informant, on January 4, 2004 justification would have existed for a search incident to an arrest of the Acura auto, which is where the drugs allegedly were sold from. But, the police purposely delayed the arrest of the defendant until February 26th. By February 26th probable cause for a search for evidence of the crime committed on January 4th was lost. The Government cannot have it both ways. If they have cause to arrest for a crime but delay in making the arrest, they cannot still have cause for a search incident to that arrest for evidence of that crime. The sale on January 4, 2004 does not help confirm that drugs were in the car on February 26, 2005. The event was stale. There was no right to search.

CONCLUSION

In conclusion the defendants request that the Motion to Suppress be ALLOWED, or, in the alternative, that the Court order a further hearing on the matter or any relief that the Court deems appropriate.

Dated:        November 15, 2005

Respectfully submitted,
Jonathan Matos
By his Attorney,
/s/ John E. DeVito
John E. DeVito, Esquire
20 Eastbrook Road Suite 304
Dedham, MA  02026
(781) 326-1818
BBO # 122420

Ramón Díaz
By his attorney
/s/ Raymond A. O'Hara
One Exchange Place
Worcester, MA 01608
(508) 831-7551
BBO#546366

## CERTIFICATE OF SERVICE

We, Raymond A. O'Hara and John E. DeVito, appearing attorney for the Defendant Ramon Diaz and Johnathan Matos, respectively, in this matter hereby certify that true copies of the within Motion and Memorandum have this date been mailed, postage prepaid, to all counsel of record and filed electronically with the Court.

DATED: November 21, 2005

/s/Raymond A. O'Hara
Raymond A. O'Hara, Esquire
1 Exchange Place
Worcester, MA 01608
(508) 831 7551
BBO #546366

/s/ John D. DeVito
John E. DeVito, Esq.
20 Eastbrook Road
Dedham, MA 02026
(781) 326-1818
BBO #122420