UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 04-10237-NG |
| v. ) | |
| ) | |
| JONATHAN MATOS and ) | |
| RAMON DIAZ ) | |
| ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Massachusetts, hereby submits its Opposition to Defendants' Motions to Suppress Evidence ("Motion") filed by Defendants Jonathan Matos and Ramon Diaz on September 6, 2005. As explained below, this Court should deny the defendants' motions because they lack merit.

**I.   FACTS**

Detectives Shane Ramos, Mark Blouin and Michael Carrier testified in this matter on September 15, 2005. The government will not reiterate those facts already elicited at the hearing. However, the government notes that it has provided to the defendants a copy of the drug certification from the January controlled buy, T-Mobile telephone records, and Detective Shane Ramos' handwritten surveillance notes. These documents have been appended to the defendants' supplemental memorandum and the government does not additionally do so to its own memorandum.

## II.  LAW

### A. The Detectives Had Probable Cause to Search the Car Based on Ongoing Police Surveillance.

In Chambers v. Maroney, the Supreme Court recognized an automobile exception to the Fourth Amendment's warrant requirement where the police have probable cause to search the car. 399 U.S. 42, 47 (1970). The First Circuit has found that probable cause exists for a warrantless search of a motor vehicle "in response to information gathered as a result of police surveillance of the defendants over a period of time." United States v. Santana, 895 F.2d 850, 850-51 (1st Cir. 1990). In United States v. Santana, police surveillance, which began in the late summer of 1988, lead to an automobile search in late September of that year. Id. The court found that under the totality of the circumstances test probable cause existed for the officers to stop and search the defendant's vehicle based on information gleaned from the surveillance. Id. at 852.

Similarly, there was probable cause to search the car Matos and Diaz were driving on February 26, 2004. The defendants had been under police surveillance for nearly three months by the time their car was searched. This ongoing surveillance provided the police multiple sources of evidence that indicated Matos and Diaz were engaged in ongoing drug trafficking. First, on multiple occasions, the police observed Matos and Diaz conducting activities consistent with drug distribution. Matos and Diaz used multiple cars, none of which were registered to them, and appeared to use multiple stash locations during these drug transactions. Drug dealers commonly use both of these tactics.

Second, the police successfully executed a controlled buy from Matos on January 4, 2004. Third, the detectives were aware that five hours before the motor vehicle stop Matos had sold cocaine to the confidential informant ("CI") from the car in which he was a passenger. Given the past surveillance, the controlled buy in January, and the buy earlier in the day, the detectives had probable cause to believe that there were drugs or other evidence of drug dealing (i.e., proceeds) in the car before the trip to Cranston.

Finally, the trip to Cranston itself was suggestive of drug activity. During the time leading up to the search, the CI indicated to Detective Ramos that Matos and Diaz had a supplier in the Providence, Rhode Island area. On February 26, 2004, the day of the search, the CI told detectives that Matos was driving his green Mazda when the CI bought the drugs. Detectives located the car and then followed it to Cranston, Rhode Island, the town immediately south of Providence. The Detectives noted that the car exceeded the speed limit at times and used the passing lane to pass cars in front of it. When it arrived in Cranston, they observed it back into a driveway and both occupants exit and enter a residence. Only a few minutes later, the detectives observed both occupants reenter the car and followed it as it traveled north towards Massachusetts.

On the return trip, the car was driven in a decidedly different manner than it been driven on the way down. The car remained in the slow lane, maintained the speed limit and was cautious in its maneuvering. These factors, in combination with the surveillance of the preceding three months, the controlled buy in January and the buy earlier in the day, led the detectives to believe that narcotics or the proceeds of narcotics sales would be found in the car.

That the officers searched a secret hide within the car was not unreasonable. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. United States v. Ross, 456 U.S. 798, 825 (1982).

**B.     The Detectives Had Reasonable Suspicion to Stop the Car.**

The stop of the car is also supported by the lesser standard of reasonable suspicion. The same factors that led to a probable cause search of the car, also lead to reasonable suspicion to stop the car. The suspicion was elevated to probable cause to search when the wad of money, some of which had been wrapped in plastic, was observed in plain view on the front seat of the car. Further enhancement was provided when officers observed markings on the left side of the airbag area, which Detective Blouin testified appeared to be from wear and tear, leading him to believe there was a hide under the dash.

**C.     The Search was Incident to a Probable Cause Arrest for the Controlled Buy in January.**

The police had probable cause to believe that Matos had sold cocaine to the CI in January. Armed with that probable cause, the detectives had reason to arrest Matos and stop and search the car in which he was riding, even though it was for a charge they never intended to bring. See United States v. Bizier, 111 F.3d 214, 219 (1st Cir. 1997). In Bizier, the First Circuit found that two controlled buys by a confidential informant provided probable cause to arrest the defendant, even though the controlled buys were never charged. Id. Like Matos and Diaz, Bizier was the target of a drug distribution investigation in Maine. Within a week of conducting two controlled buys, the CI told DEA agents that Bizier was traveling to Massachusetts to pick

up a supply of cocaine.  Maine state troopers located Bizier's car and pulled him over for speeding.  Bizier took an unusually long time to pull over and the troopers made observations of him that suggested he was under the influence of drugs.  Bizier consented to a search of the vehicle and admitted there was a small amount of marijuana in the ashtray of the car.  A police dog brought to the scene alerted to the presence of narcotics in the front seat.  Thirty minutes after the stop, the car was towed to a State Police facility pending the application for a search warrant.

After speaking to one of the investigating DEA agents and being advised that there was probable cause to arrest Bizier for cocaine distribution, a trooper conducted a search of Bizier and found two bags of cocaine.  Bizier was then formally placed under arrest.  In upholding the search, the First Circuit found that the search was a lawful search incident to an arrest even though the search preceded the arrest.  The court, citing Rawlings v. Kentucky, 448 U.S. 98 (1980), stated: "[W]hether a formal arrest occurred prior to or followed 'quickly on the heels' of the challenged search does not affect the validity of the search so long as the probable cause existed prior to the search."  The Court further found that there was probable cause to arrest for both the traffic offense (driving under the influence of drugs) and the two controlled buys.  Bizier contended that because he was charged only with a cocaine offense relating to the drugs found during the search, there was no preexisting probable cause and therefore no justification for the arrest.  The court stated that Bizier's argument was without merit because a lawful custodial arrest, and search incident to that arrest, need not be for a charge eventually prosecuted.  Id.  The court specifically stated: "[T]he search of Bizier immediately before his formal arrest could be justified as a search incident to arrest based on the controlled buys alone."

Id.  Accordingly, the search of the vehicle immediately preceding the arrest of Matos and Diaz was justified as a search incident to arrest.

Extending the search into a closed hidden compartment was also justified.  When police make a valid arrest of an occupant of a car, they may search the passenger compartment and any containers within it.  United States v. Infante-Ruiz, 13 F.3d 498, 503 (1st Cir. 1994) (search of contents of a passenger compartment of car and containers found within it is valid as incident to arrest).  This theory is based on the fact that the interior of a passenger compartment is generally within an arrestee's reach.  United States v. Belton, 453 U.S. 454, 460 & n.4 (1981).  The First Circuit has even extended the scope of the search to the hatch area of the car, an area accessible from within the passenger compartment, based on this theory.  United States v. Doward, 41 F.3d 789, 794 (1st Cir. 1994).  Here, the hide was located under the dashboard of the car.  Matos would have easy access to it whether seated in the passenger or driver's seat.

### D. The evidence from which probable cause for the search arises is not stale.

Although the controlled buy which formed the basis for probable cause arrest occurred more than seven weeks before the search, it is not stale.  In Bizier, the First Circuit, citing United States v. Watson, 423 U.S. 411 (1976), stated that probable cause to arrest, once formed, continues to exist for the indefinite future, at least if no intervening exculpatory facts come to light.  Here, no such intervening facts exist.  Indeed, the only relative facts subsequent to the January buy and before the stop and search of their car, inculpate the defendants: (1) the CI's buy earlier in the evening; and (2) the 45 minute trip to Cranston for a less than 5 minute stay which substantiated the CI's information that Matos' supplier was in Rhode Island.

### III.     CONCLUSION

The police had probable cause to search the car based on the three months of surveillance, the controlled buy in January, the earlier buy the day of the search, and the defendant's trip to Rhode Island.  In addition, the police were justified in searching the compartment area of the car incident to the arrest of Matos for the January controlled buy.  Defendants argue that any search incident to the arrest should have been limited to the person of the defendant Matos.  This argument is misplaced and ignores the considerable case law on searches incident to arrest where the arrestee is apprehended while in a car.  Furthermore, as the driver of the car, defendant Diaz had control and dominion over much of the same area as Matos, making his removal from the car consistent with the bright-line test enunciated in <u>Belton.</u>

WHEREFORE, the government respectfully requests that this Court deny the defendants' pending Motion because it lacks merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  <u>/s/ Kimberly P. West</u>
     KIMBERLY P. WEST
     Assistant U.S. Attorney

DATED: November 28, 2005

CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney for defendant Ramon Diaz, Raymond O'Hara, 1 Exchange Place, Worcester, MA, 01608, and the attorney for Jonathan Matos, John DeVito, 20 Eastbrook Road, Dedham, MA, 02026 on November 28, 2005 by first class mail.

      /s/ Kimberly P. West
      Kimberly P. West
      Assistant U.S. Attorney