UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**         ) | |
| ) | |
| v.                                    ) | Docket No. 04-cr-10237-NG |
| ) | |
| **JONATHAN MATOS, RAMON DIAZ,**        ) | |
|     **Defendants.**                    ) | |

**GERTNER, D.J.**

### MEMORANDUM AND ORDER RE: MOTION TO SUPPRESS
### December 29, 2005

The defendants, Jonathan Matos and Ramon Diaz, move to suppress the fruits of a search of the car in which they were riding on February 26, 2004, namely a gun, a quantity of money and cocaine. Matos was the passenger; Diaz was the driver. As in many of the cases before me, this is a federal case built on the work of local police officers, now subject to federal constitutional standards.

I held a hearing on September 15, 2005. As a result of that hearing, I conclude that the motions to suppress [document ## 34 and 37] are **DENIED**.

Prior to the evening of February 26, 2004, the government, the New Bedford police, had the following information which strongly suggested that the defendants were dealing drugs:

- A confidential informant ("CI") whose tips, according to Officer Ramos, had proven true in the past informed the officer that defendants Matos and Diaz were dealing

>   cocaine in the New Bedford Area, cocaine which had been supplied from the Providence, Rhode Island area.
> - The CI gave the police lists of vehicles and homes used by the defendants as well as the name and phone number of a person whom Matos allegedly supplied with cocaine, Gordon Gomes.
> - The CI made a controlled purchase of cocaine from Matos in early January 2004.

The police had the defendants under surveillance thirteen times between December 2003 and February 2004. They noted the defendants' use of multiple cars registered to different owners and multiple homes, corroborating some of the CI's information. While the officers testified that this behavior was consistent with drug dealing, they did not directly observe any drug transactions.

The officers' surveillance bore fruit on February 26, 2004, when Ramos received a tip from the CI who claimed that he had just purchased cocaine from Matos; the second time he had done so.

At 9:30 p.m. that evening, the police located and followed the green Mazda to Cranston, Rhode Island where the defendants went into a house for three or four minutes. They then returned to New Bedford, when Lt. Cordeiro of the New Bedford Police department ordered the car stopped.

Without a warrant, the police directed the defendants to exit the car and then searched it.  They found a roll of money in "plain view," on the dashboard, a revolver and 17.7 grams of cocaine in a "hide" in the dashboard.

**I.   PROBABLE CAUSE**

There was probable cause to stop the Mazda.  While the defendants have an innocent explanation for the multiple cars, namely that Matos was a car dealer, the police were plainly justified in thinking otherwise.  Probable cause is a threshold standard.  The defendants had been under police surveillance for nearly three months by the time their car was searched.  The police surveillance corroborated the accusations, the multiple cars and multiple owners, the way in which the defendant drove. Moreover, the police had successfully executed a controlled buy on January 4, 2004.

Five hours before the motor vehicle was stopped, Matos had sold cocaine to the CI from a car in which he was a passenger. Given the past surveillance, the controlled buy in January, and the transaction on February 26, 2004, the detectives had probable cause to believe that there were drugs or other evidence of drug dealing in the green Mazda before the trip to Cranston.

The trip to Cranston lent further support to the hypothesis of drug dealing as well as buttressing the CI's credibility.  The CI had indicated to Detective Ramos that Matos and Diaz had a

supplier in the Providence, RI area. On the day of the search, February 26, 2004, the CI told detectives that Matos was driving his green Mazda when the CI brought the drugs. Detectives located the car and followed it to Cranston, RI. When it arrived in Cranston, it stayed a short time, both occupants entered, and shortly thereafter exited.[1]

## II. <ins>SEARCH INCIDENT TO ARREST</ins>

Once the officers had probable cause to arrest the defendants, they had a lawful basis to search the car. And once they had the basis to search the car, they had the grounds to search all parts of it, including the "hide." <ins>Caroll v. United States</ins>, 267 U.S. 132 (1925)(creating the so called "automobile exception" to the warrant requirement). In <ins>Chambers v. Maroney</ins>, 399 U.S. 42, 44 (1970), the Court upheld a warrantless search revealing guns "concealed in a compartment under the dashboard."

But perhaps the most telling case is <ins>United States v. Lopez</ins>, 380 F.3d 538 (1st Cir. 2004), a search of a "hide" on facts striking similar to the case at bar (confidential informant, surveillance, controlled drug buys). DEA and New Hampshire police arrested defendant in his minivan. They transported the car to the police station and search it without a warrant. An

---

[1] In the alternatives the officer suggest that even if the standard were "only" reasonable suspicion, the standard for a stop under <ins>Terry v. Ohio</ins>, 392 U.S. 1 (1968), it was met in this case. The officers stopped the car and when they did they saw a large amount of money in "plain view" on the front seat. Arguably, that confirmed their suspicions and transformed reasonable suspicion into probable cause.

officer noticed "a wire leading to a locked compartment under the front passenger seat," in which the police found cocaine and a gun.  Id. at 542.  The court upheld the search under the automobile exception:

"The fact that the contraband was in a container in a locked, hidden compartment does not justify any extra measure of consideration . . . [E]fforts to restrict access to an area do not generate a reasonable expectation of privacy where none would otherwise exist."  Id. at 544-45 (citing New York v. Class, 475 U.S. 106, 114 (1986).

The hydraulic hide was within the passenger compartment.  Once inside the passenger area, an officer testified to observing pry marks by the air bag and relays under the steering column, tell-tale signs of a hidden compartment.

Therefore, the Motion to Suppress of Defendant Jonathan Matos [document #34] and the Motion to Suppress of Defendant Ramon Diaz [document #37] are **DENIED.**


**SO ORDERED.**

**Date:   December 29, 2005        /s/NANCY GERTNER, U.S.D.J.**